UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHRIS TATE,<br><br>        *Plaintiff*,<br><br>   v.<br><br>NATIONAL POSTAL MAIL HANDLERS UNION LOCAL 305, *et al.*,<br><br>        *Defendants.* | Civil Action No. 16-2021 (DLF) |

**MEMORANDUM OPINION**

Before the Court is the defendants' Motion for Summary Judgment. Dkt. 16. Because the plaintiff lacks standing, the Court will dismiss the suit without prejudice.

**I. BACKGROUND**

Pro se plaintiff Chris Tate, a mail handler in the Washington, D.C. office of the United States Postal Service, sued the National Postal Mail Handlers Union (the Union) and its local regional president, Felandria Jackson. Tate claims that Sandra Anderson—a Postal Service coworker and union agent who he says was charged with representing his interests—wrongfully submitted an unfavorable witness statement after he was involved in a verbal altercation with another mail handler on April 14, 2016. He seeks $15,000 in damages. Compl. at 1, Dkt. 1-1.

The Union certifies "stewards" to represent employees by investigating, presenting, and settling workplace grievances. Union Agreement, Dkt. 16-4 at 24. As a Union-designated "alternate steward," Anderson was responsible for assuming the duties of an absent regularly assigned steward. *Id.*; Vines Decl. ¶ 5, Dkt. 16-2. The regularly assigned steward was off work at the time of the altercation, Vines Decl. ¶ 6, and the parties dispute whether that placed

Anderson in the steward role.  *See* Anderson Decl. ¶ 5, Dkt. 16-5 (Anderson testifying that she "engaged in no steward activities" on the day of the altercation); Tate Dep., Dkt. 16-3 at 14 (Tate testifying that Anderson "is at all times, as a matter of fact, a shop steward").  Anderson witnessed at least part of the altercation, and eight days later a supervisor asked her to provide a witness statement.  Anderson Decl. ¶ 6.  As Anderson told it, the altercation began when a coworker arrived at work, noticed Tate sitting idly while Anderson worked, and confronted him about his inactivity.  Witness Statement, Dkt. 16-5 at 4.  That provoked a heated exchange of words, Anderson reported, and Tate "chest bump[ed]" and threatened his antagonist.  *Id.*  Anderson then left to get help.  *Id.*  In Tate's version of the story, he simply stood up for himself after a drunken coworker who had no authority over him berated him for not doing his job, when in fact he had been working hard all morning.  Tate Dep. at 16–19.  Tate did not face any disciplinary action as a result of the altercation.  Vines Decl. at ¶ 7; Tate Dep. at 24–25.

Six days after the altercation, Tate filed a claim for benefits with the United States Office of Workers' Compensation Programs.  Citing the altercation, Tate alleged that he had suffered a traumatic injury and sustained an emotional condition because of a stressful work environment.  Workers' Compensation Decision, Dkt. 16-3 at 75.  On June 9, 2016, the Office of Workers' Compensation denied the claim on two independent grounds, concluding that (1) Tate was not performing work duties when the altercation occurred; and (2) Tate failed to produce evidence establishing a medical diagnosis and a causal link between his work activities and medical harm.  *Id.*  Upon learning of the decision, Tate requested copies of the documents filed with the Office of Worker's Compensation in his case, and Anderson's witness statement was among them.  Tate Dep. at 48.

Tate sued Jackson and the Union in D.C. Superior Court on September 13, 2016, and the defendants removed the case to this Court. *See* Dkt. 1-3. The complaint states in its entirety: "I was misrepresented by Local 305 shop steward pertaining to incident on 4-14-16." Compl. at 1. Construed favorably on behalf of the pro se plaintiff, the Court reads the complaint to allege that the witness statement breached the duty of fair representation owed by unions to employees under federal labor laws. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (describing the duty and explaining that it bars unions from conduct that is arbitrary, discriminatory, or in bad faith); Tate Opp'n Mem. at 2, Dkt. 18 (Tate elaborating the reasons for the suit). The case was reassigned to the undersigned judge on December 5, 2017.

## II. LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Regardless of the stage of litigation, the Federal Rules of Civil Procedure requires a court to dismiss a suit when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). It is "presumed that a cause lies outside [the court's] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). At the summary judgment stage, standing—a requisite to subject-matter jurisdiction—must be premised not on "mere allegations" but on "specific facts" set forth "by affidavit or other evidence." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (some quotation marks omitted).

## III. ANALYSIS

The Constitution empowers the federal judiciary to adjudicate only cases or controversies. U.S. Const. art. III, § 2, cl. 1. This limitation confines federal courts to "the

traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). The doctrine of standing enforces this limitation. *Id.* To establish standing, a plaintiff must demonstrate a concrete injury-in-fact that is fairly traceable to the defendant's action and capable of being redressed by a favorable judicial decision. *Id.* at 493. A court "has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Id.* at 499. If standing does not exist, the court may not "step[] where the Constitution forb[ids] it to tread" by addressing the merits. *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016).

Tate lacks standing because Anderson's witness statement caused him no injury. The mere fact that the Union allegedly breached the statutory duty of fair representation is not enough. A plaintiff cannot premise standing on "a bare violation of the . . . law," *id.* at 514, because "Article III standing requires a concrete injury even in the context of a statutory violation," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016); *see also id.* ("[A] bare procedural violation, divorced from any concrete harm," is insufficient.). In certain cases, to be sure, the "actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotation marks omitted); *see also Carey v. Piphus*, 435 U.S. 247, 266–67 (1978). But *Spokeo* clarified that any presumption of injury is limited to cases in which a sufficient "risk of real harm" inheres in the statutory violation. 136 S. Ct. at 1549; *see also id.* at 1550 (vacating the circuit court judgment because the court "did not address the question framed by our discussion, namely, whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement"); *Hancock*, 830 F.3d at 514

(describing an argument that statutory violations are generally presumptively injurious as "vastly overread[ing]" *Warth v. Seldin* in light of *Spokeo*); *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 929–930 (8th Cir. 2016) (similar); *Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transp.*, 879 F.3d 339, 343 (D.C. Cir. 2018) (observing that the presumptively injurious statutory violations given as examples by the Supreme Court "resulted either from the disclosure of potentially harmful information or from the withholding of public information" when "[t]here is no reason to doubt . . . that the information would help [the plaintiffs]," *FEC v. Akins*, 524 U.S. 11, 21 (1998)). When an alleged statutory violation "result[s] in no harm," no injury-in-fact exists. *Spokeo*, 136 S. Ct. at 1550. In other words, a suit cannot proceed "without some concrete interest" affected by the statutory violation. *Summers*, 555 U.S. at 496.

That concrete interest is absent here. Both Tate and the Union suggest that the denial of the workers' compensation claim injured Tate and thus confers standing. *See* Tate Opp'n Mem. at 2; Union Suppl. Mem. at 5, Dkt. 20.[1] But no causal link exists between the Office of Workers' Compensation decision and Anderson's witness statement. The decision was based on two independent grounds: (1) Tate's alleged injuries did not occur during the performance of work

---

[1] The Union offers two additional standing arguments in Tate's favor, but both fail. First, the Union asserts that "[i]n duty of fair representation cases . . . the courts have typically inquired as to whether or not the plaintiff is someone to whom the union owed a duty in its role as exclusive bargaining representative," and that Tate is indeed someone to whom the duty was owed. Union Suppl. Mem. at 3–4. The Union is correct, of course, that someone who is not owed a duty of fair representation does not have standing to sue for breach of that duty, but that is beside the point. It is unquestioned that the Union owed Tate a duty; that does not mean the Union injured him. Second, the Union observes that "[p]leading injury at the hands of the employer is not a prerequisite for standing in a breach of fiduciary duty complaint brought only against the union." *Id.* at 5. True again, but again beside the point. Tate need not allege that his employer injured him, but an allegation that the Union injured him is required.

duties; and (2) Tate failed to produce medical evidence.[2] Workers' Compensation Decision at 75. The letter of decision contains no indication that Anderson's witness statement contributed to either conclusion. In the letter's only mention of the witness statement, the Office of Workers' Compensation observed that the witness statement "corroborated" Tate's assertion that an altercation occurred. *Id*. It is true that after explaining its grounds for decision, the Office of Workers' Compensation mentioned that "[s]everal witness statements" reflected a consensus that Tate had trouble getting along with coworkers, *id.* at 76, and Anderson's witness statement likely was one of them. But the conclusion that the altercation did not occur during the course of work performance was not based on that purported consensus. Moreover, Tate's failure to produce medical evidence could not have been caused by the witness statement—he did not even know about the witness statement until after his claim was rejected. *See* Union Mot. Summ. J., Dkt. 16, at 16–17. In other words, it is clear that had Anderson's statement never been given, Tate's workers' compensation claim still would have been denied. And it requires speculation to suggest that the statement played any adverse role in the decision at all.

Beyond the rejection of the workers' compensation claim, Tate suffered no adverse event in the aftermath of the altercation. *See generally* Tate Dep. Tate based his damages calculation on leave time that he was forced to expend, he claims, because of injuries resulting from the altercation. *See id.* at 65. That alleged harm, however, derives solely from the altercation itself and the denial of the workers' compensation claim; it is unrelated to Anderson's witness statement. And while Tate views the witness statement as malicious, unfair, and hurtful,

---

[2] Tate claims that he did provide medical evidence, Tate Dep. at 37, but that is irrelevant because the suit does not challenge the Office of Workers' Compensation decision.

"psychic satisfaction . . . does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998).

Finally, whether or not a breach of the duty of fair representation might sometimes "entail a degree of risk [of injury] sufficient to meet the concreteness requirement," *Spokeo*, 136 S. Ct. at 1550, the alleged breach here does not.  There was perhaps at one time a risk that the witness statement might contribute to an adverse disciplinary action or workers' compensation decision.  Any such risk was extinguished, however, by the time Tate filed his suit about five months after the altercation.  By then, the Office of Worker's Compensation had already denied Tate's claims for reasons having nothing to do with the witness statement, and any potential for disciplinary action was long gone.  *See* Vines Decl. ¶ 7 ("Neither Tate nor [the other worker] were disciplined as a result of the April 14, 2016 altercation.").

## CONCLUSION

For the foregoing reasons, the Court dismisses the suit without prejudice pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.  A separate order consistent with this decision accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

Date:  April 12, 2018